## Barsky v. Lutz & Schramm Co., Appellant.

*Contracts—Written contracts—Construction—Case for jury.*

Where a contract for the sale of sauerkraut provided that, in the event of a short crop, the contract orders might be filled pro rata, and where there was no evidence introduced of the shortage of the crop, other than upon a certain tract, the burden of proof was clearly upon the defendants to produce evidence which would support a finding that the plaintiff knew, or should have known, their methods of doing business, and that the shortage of the crop mentioned was a shortage in about 200 acres of territory adjacent to their plant, the product of which they had bought to enable them to fulfill their contract. Without such evidence they could not ask the jury to write into their contract, an exemption from liability not imported by the language of the written contract.

*Contracts—Breach of contract—Damages—Case for jury.*

Where the testimony as to the amount of damages sustained in a breach of contract is parol, even though it be uncontradicted, the credibility of the witness testifying as to such damages, is for the jury and until that attribute is stamped on his testimony by a verdict it is not competent for the trial judge to assume their function and to direct them to find for the plaintiff in a specified amount. The only correct method when the testimony is oral, and especially in cases where damages are to be liquidated, is to submit the case to the jury, and failure to do so constitutes reversible error.

Argued April 28, 1920. Appeal, No. 41, April T., 1920, by defendant, from judgment of C. P. Allegheny County,

450   BARSKY *v.* LUTZ & SCHRAMM CO., Appellant.

Statement of Facts—Opinion of the Court. [74 Pa. Superior Ct. April T., 1917, No. 1185, on verdict for plaintiff in case of H. Barsky v. Lutz & Schramm Company, a Corporation. Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Assumpsit on written contract. Before WASSON, J.

The facts are stated in the opinion of the Superior Court.

The court directed a verdict in favor of the plaintiff for $360.81 and entered judgment thereon. Defendant appealed.

*Error assigned* was in directing a verdict for the plaintiff.

*William A. Wilson,* of *Calvert, Thompson & Wilson,* and with him *George B. Berger,* for appellant.—What the parties meant by the term "shortage of crop" is a question of fact and should have been left to the jury: National Dredging Co. v. Munday, 155 Pa. 233.

As the testimony was oral, the amount of damages was a question for the jury: Bank v. Donaldson, 6 Pa. 179; Lehigh Coal & Navigation Co. v. Evans et al., 176 Pa. 28; Lautner v. Kann, 184 Pa. 334; Barnett v. Becker, 25 Pa. Superior Ct. 22; Reel v. Elder, 62 Pa. 308; Edwards v. Woodruff, 25 Pa. Superior Ct. 575; Coyne v. Lackawanna County, 53 Pa. Superior Ct. 603; Newman v. Romanelli, 244 Pa. 147; Canole v. Allen, 222 Pa. 156.

*Morris G. Levy,* and with him *Levy & Levy,* for appellees, cited: McCracken v. Roberts, 19 Pa. 390; Koons v. Steele, 19 Pa. 203; Holland v. Kindregan, 155 Pa. 156; Lonzer v. Lehigh Valley R. R. Co., 196 Pa. 610; Wells v. The Insurance Co., 191 Pa. 207; Cougle v. McKee, 151 Pa. 602.

OPINION BY HEAD, J., July 14, 1920:

By two written contracts that, for the purpose of this case, are identical in terms, the defendant agreed to sell

and the plaintiff to buy twenty barrels of sauerkraut at the price per barrel specified in the contracts. We quote two provisions of these contracts which become important in the consideration of the questions involved in this appeal.

1. "The quantity specified herein may be taken in one or more deliveries but all must be prior to February 1, 1917."

3. "In the event of a short crop of any of the items herein named, Lutz & Schramm Co. may at their option fill pro rata all contract orders."

The contracts were dated in August, 1916. The defendant delivered but two barrels of sauerkraut and refused to deliver any more, alleging a shortness of the cabbage crop as a justification for such refusal. In January, 1917, the plaintiff made a specific demand for the delivery of the remaining eighteen barrels covered by the contract and gave notice that, if they were not received by the first of February following, he would go into the open market and buy the same, charging the difference in price to the defendant. To that letter the defendant replied by calling the attention of the plaintiff to the clause of the contract we last quoted, declaring it exhibited the reason for not making the complete shipment called for by the contract. The plaintiff testified that in the month of February he purchased the eighteen barrels which the defendant had failed to deliver, at a price very considerably in advance of the contract price, and he brings this action to recover the amount of money he was thus compelled to expend by reason of the breach of his contract.

The evidence having been heard, the learned court below directed the jury to return a verdict for the plaintiff for a specific sum of money and upon the verdict thus rendered judgment was entered. This appeal followed.

There was evidence offered by the defendant tending to show that their factory was located in the City of Sandusky, Ohio. Their method of doing business was to

calculate an acreage which, under normal conditions, should produce enough cabbage to enable them to fill all the contracts they made. They further offered evidence tending to show that upon the acreage thus contracted for in the vicinity of their factory, there had been such a shortage of the cabbage crop for that year, owing to unfavorable weather conditions, that they were unable to deliver more than ten per cent of the manufactured product they had contracted to deliver to their various customers. This amount they declared had been evenly and ratably distributed over their various contracts.

Did the evidence offered by the defendant, confined as it was to the product of two hundred acres of land of their own selection, bring the defendant within the exception of the clause of the contract we have quoted and thus relieve them of liability for further deliveries? The appellant earnestly so argues and relies, to a very considerable extent, on a case decided in the St. Louis Court of Appeals, to wit, Ryley-Wilson Grocery Co. v. Seymour Canning Co., reported in 108 Southwestern Reporter 628, construing a clause in a contract, in effect very much like the one before us. The following excerpts from the elaborate and learned opinion in that case will sufficiently indicate the viewpoint of the court: "The instruction given for defendant errs in confining the meaning of the expression 'total failure or destruction of crop,' as used in the contract, to the crop in the vicinity of the cannery from which defendants expected to secure their supply of tomatoes. This limitation took no account of what plaintiff understood the expression to mean......These parties introduced an exception in case of a failure of the tomato crop over a territory left undefined. For this exception to come into play and excuse defendants from delivering the tomatoes as agreed, it was essential for the crop to fail over the territory intended by both parties; not merely the territory from which defendants expected to get their supply......The

exception in the contract in hand purports to release defendants from liability in the event of a total failure of the crop. It is likely the parties had in mind a crop failure over some definite area, or in a certain region of the country; not a universal failure which would prevent the defendants from finding tomatoes for sale in any market of the world, or even the markets of the United States." In the state of the evidence disclosed by the record in that case the court held it became a question of fact for the jury, under proper instructions, to determine the extent of the territory in which the crop must have failed in order to bring the defendants within the exception agreed on by the parties. The judgment was reversed and a new trial ordered.

In the case at bar we are of opinion the burden of proof was clearly on the defendant to produce evidence, which would support a finding that the plaintiff knew or ought to have known their methods of doing business and that, the shortage of crop mentioned in the exception, was a shortage on about two hundred acres of territory adjacent to their plant, the product of which they had bought to enable them to fulfill their contract. We are unable to discover in the record any evidence at all that would permit the jury to find the existence of any knowledge on the part of the plaintiff that would bind him to the conclusion, that the condition under which the defendant company was to be relieved of liability had actually happened. Without such evidence they could not ask the jury to write into their contract an exemption from liability not imported by the language of the written contract. There was therefore nothing to submit to the jury on that branch of the defense and the learned trial judge was warranted in his conclusion that in that respect the defense had failed.

But, assuming there was a breach of the contract, the amount of damages recoverable by the plaintiff depended on a number of considerations which should have been resolved by the jury under proper instructions from the

court. The testimony on this branch of the case was wholly in parol. It is true the plaintiff testified he paid $28.50 per barrel for each one of the eighteen barrels he bought and offered in evidence, by way of corroboration, two receipted bills indicating such purchases. Their probative value, however, was nothing more than the oath of the plaintiff. He also testified that the price he claimed to have paid was the true market price at the time he bought. That is to say that the price he paid was the fair market value of the commodity. It is true also that no one was produced by the defendant to controvert these assertions. Nevertheless, the credibility of the witness was for the jury and, until that attribute was stamped on his testimony by the verdict, it was not competent for the learned trial judge to assume their function and direct their finding in favor of the plaintiff.

In Darrah v. Kadison, 51 Pa. Superior Ct. 133, will be found a long line of cases, the authority of which cannot now be successfully challenged: "Where a case depends on oral testimony, such testimony must be submitted to the jury": Lehigh Coal & Nav. Co. v. Evans, 176 Pa. 28. "In Lautner v. Kann, 184 Pa. 334, Mr. Justice FELL, speaking for the Supreme Court, said: 'The credibility of a witness is for the jury, and they are not bound to accept his statements because he is unimpeached and uncontradicted by other witnesses. He may impeach and contradict himself on the witness stand, or the jury may believe that he is honestly mistaken. The question is for the jury and not for the court.'" To show there has been no departure from the rule declared in the cases referred to, we quote from the opinion of Mr. Justice STEWART in Canole v. Allen, 222 Pa. 156. In speaking of certain parol testimony, which apparently the trial judge had construed as establishing a particular fact, the learned justice says: "The fact that defendant offered nothing against it did not establish it as a matter of law for the court to so declare. It is nothing to the purpose to say that the result would not have been differ-

ent had the case been submitted. How are we to know it would not, except as we assume that the jury would have given the same credit to the witness as did the judge, and put the same construction upon his language? These are considerations peculiarly and exclusively for the jury. Besides, it is not a question of result, but of method in reaching a result. There is only one correct method when the testimony is oral, and especially in cases where damages are to be liquidated, and that is through the deliberate action of the jury."

We are thus driven to the conclusion the learned trial judge fell into error in directing the jury to find for the plaintiff in a specified amount of damages, and for this reason the judgment must be reversed and a new trial awarded.

Judgment reversed and a venire facias de novo awarded.